1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10   THOMAS F. REISER JR. and LINDA           No.  2:16-cv-00237-MCE-CKD
     T. REISER, individually and as
11   Trustees of the Tom and Linda Reiser
     Living Trust Dated June 20, 2006, et
12   al.,                                      **MEMORANDUM AND ORDER**

13                    Plaintiffs,

14        v.

15   MARRIOTT VACATIONS
     WORLDWIDE CORPORATION, a
16   Delaware corporation, et al.,

17                    Defendants.

18

19        The present lawsuit stems from the purchase, by twenty-two parties (collectively,

20   "Plaintiffs"),  of fractional interests in the Ritz-Carlton Club, Lake Tahoe, located in

21   Truckee, California (the "Lake Tahoe Ritz").  Currently before this court is Defendants'

22   Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") for failure to state a

23   claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure

24   12(b)(6).[1]  For the reasons set forth below, Defendants' Motion is DENIED.

25   _____

26        [1] The SAC identifies the following Defendants: Ritz-Carlton Development Company, Inc. ("RC
     Development"), Ritz-Carlton Sales Company, Inc. ("Ritz-Carlton Sales"), Ritz-Carlton Management
27   Company, LLC ("RC Management"), Cobalt Travel Company, LLC ("Cobalt"), Marriott Ownership Resorts,
     Inc., d.b.a. Marriott Vacation Club International, and Marriott Vacations Worldwide Corporation
28   (collectively, "Defendants").

                                              1

1

**BACKGROUND**[2]

2

3    The Lake Tahoe Ritz consists of twenty-eight residential condominiums ("Club

4    Interest Units").  Under a framework established by the so-called Club Interest

5    Declaration,[3] Defendants fractionalized these twenty-eight Club Interest Units into three

6    hundred thirty-six timeshare units (""fractional interests" or "fractional units").  The Club

7    Interest Declaration, which was specifically incorporated within the Purchase

8    Agreements used to buy the fractional interests, established a Club Interest Association

9    with authority over not only the common areas of the complex but also each individual

10   fractional interest purchased.

11         On May 16, 2008, in accordance with the Club Interest Declaration, Defendant

12   RC Management agreed to act on behalf of the Club Interest Association and its

13   members as the exclusive operating entity of the Club.  The resulting Management

14   Agreement[4]  delegated absolute control over the deeded fractional property interests to

15   RC Management, including authority over the rules and regulations governing each

16   owner's use of a fractional unit, and all authority to maintain the Club Interest Units.  RC

17   Management, in turn, delegated managerial authority and control over use of the Club

18   Interest Units, pursuant to its authority to hire subagents, to Defendant Cobalt.

19         In early 2009, Defendants sold one-twelfth fractional units to Plaintiffs and

20   approximately thirty-eight other buyers.  As owners of fractional interests, Plaintiffs were

21   given exclusive accessibility rights to the Lake Tahoe Ritz not available to non-owners of

22   fractional interests.  Among other benefits, Plaintiffs' ownership entitled them to spend

23   up to twenty-one days per year at the Lake Tahoe Ritz.

24   ///

25   _____

        [2] This statement of facts is based on the allegations contained within the SAC.  ECF No. 19.

26
        [3] This document, known formally as the Declaration of Covenants and Restrictions for the
27   Highlands Resort West Parcel Club, is dated May 30, 2008.

28      [4] This agreement, entered into on May 16, 2008, is formally named the Highlands Resort Club
     Association Operating Agreement and was later amended on March 19, 2010.

1    Defendants' efforts to sell fractional units in the Lake Tahoe Ritz stalled as the
2    economy deteriorated.  In November 2011, Defendants de-annexed seventeen of the
3    original twenty-eight Club Interest Units and sold them as regular, non-fractionalized
4    condominium units.  In July 2012, Defendants announced their intention to pursue a new
5    external exchange affiliation ("MVC Affiliation") between Defendant Ritz-Carlton
6    Development Company, Inc. ("RC Development") and the Marriott Vacation Club
7    ("MVC") that afforded MVC members many of the same privileges at the Lake Tahoe
8    Ritz that Plaintiffs enjoyed as fractional unit owners.  MVC is a larger, less exclusive, and
9    less expensive competing product managed, owned, and promoted by Defendants.  In
10   2014, Defendants used their control over Cobalt to implement the MVC Affiliation.
11   Through the MVC Affiliation with RC Development, MVC members can spend just as
12   many days at the Lake Tahoe Ritz as Plaintiffs and do so at a significantly reduced cost
13   compared to Plaintiffs.
14       As a result of the de-annexation of Club Interest Units and the MVC Affiliation, the
15   operational costs at the Lake Tahoe Ritz are spread only among the owners of fifty-nine
16   fractional units, rather than three hundred thirty-six fractional units that would exist if
17   Defendants had sold all of the Club Interest Units as fractional interests.  According to
18   Plaintiffs, the de-annexation and MVC affiliation resulted in a significant increase in the
19   annual dues that Plaintiffs must pay each year, a loss of access to the Lake Tahoe Ritz,
20   and a significant reduction in the value of Plaintiffs' one-twelfth fractional units.
21       The terms of the Club Interest Declaration, as well as the subsequent
22   Management Agreement with RC Management and RC's delegation to Cobalt, granted
23   those entities authority over not only the common areas, but also the separately deeded
24   property interests that each individual fractional unit owner purchased.  As indicated
25   above, the Club Interest Declaration gave the Club Interest Association all powers
26   necessary to ensure the proper functioning of each individual fractional unit, as well as
27   the power to delegate that authority to a professional management company.  Pursuant
28   to the Management Agreement, the Club Interest Authority delegated that authority to

3

1  RC Management.  Additionally, as authorized by California Business & Professions

2  Code Section 11267(a)(2), which allows professional management companies to hire

3  subagents, RC Management, in turn, entrusted its authority to Cobalt.  According to

4  Plaintiffs, Defendants used the resulting control to essentially gut the value of the

5  fractional interests Plaintiffs purchased.

6       Plaintiffs are therefore unable to sell their fractional units.  In May 2015, Plaintiff

7  Reiser contacted real estate agent Liza Killen ("Killen") of the Northstar Office of Tahoe

8  Mountain Realty to inquire about selling his fractional interest.  Killen responded that

9  there was only one Ritz Carlton fractional unit on the market for $5,000.00, and all other

10  listings had either expired or were cancelled.  In May 2016, Plaintiff Reiser contacted a

11  second Northstar real estate agent, Sam Drury ("Drury") of Padden Properties.  Drury

12  told Reiser that a Ritz Carlton fractional unit had not sold in the previous two years.

13  According to Drury, the fractional ownership interests, which had typically been

14  purchased for sums in excess of $200,000.00, had lost nearly all their value.  He

15  expressed the belief that there simply was no market for the interests.

16       Plaintiffs' First Amended Complaint ("FAC") alleged six causes of action:

17  (1) rescission, (2) breach of contract, (3) breach of the implied covenant of good faith

18  and fair dealing, (4) breach of fiduciary duty, (5) violation of the California's Unfair

19  Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and (6) aiding and abetting.

20  Defendants moved to dismiss Plaintiffs' FAC in its entirety for failure to state a claim, and

21  by the Memorandum and Order filed April 29, 2016 (ECF No. 19), the Court denied that

22  motion as to the rescission, breach of contract, and breach of the implied covenant

23  claims but granted dismissal as to Plaintiffs' remaining causes of action.

24       Plaintiffs subsequently filed their SAC on May 25, 2016 (ECF No. 19), which

25  prompted the Motion to Dismiss (ECF No. 22) now before the Court.  That Motion again

26  attacks all six causes of action pled in the SAC despite the fact that the Court previously

27  denied Defendants' prior motion as to three of those claims.  Defendants in essence

28  recycle their previous arguments advocating dismissal of Plaintiffs' rescission, breach of

1    contract, and breach of implied covenant claims on grounds that the Court committed

2    "clear error" in not dismissing those claims in the FAC.

3

4                                    **STANDARD**

5

6          On a motion to dismiss for failure to state a claim under Federal Rule of Civil

7    Procedure12(b)(6),[5] all allegations of material fact must be accepted as true and

8    construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

9    Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

10   statement of the claim showing that the pleader is entitled to relief" in order to "give the

11   defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell

12   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

13   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

14   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

15   his entitlement to relief requires more than labels and conclusions, and a formulaic

16   recitation of the elements of a cause of action will not do." Id. (internal citations and

17   quotations omitted).  A court is not required to accept as true a "legal conclusion

18   couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

19   Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief

20   above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright &

21   Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

22   pleading must contain something more than "a statement of facts that merely creates a

23   suspicion [of] a legally cognizable right of action.")).

24         Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

25   assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and

26   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

27

28   ───────────────
            [5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
     otherwise noted.

1  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

2  the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles

3  Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

4  facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . .

5  have not nudged their claims across the line from conceivable to plausible, their

6  complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed

7  even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

8  recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

9  232, 236 (1974)).

10

11                                                        **ANALYSIS**

12

13         **A.      Rescission, Breach Of Contract, And Breach Of Covenant**

14         Defendants seek reconsideration of the Court's prior Order dismissing

15  Defendants' Motion to Dismiss Plaintiffs' rescission, breach of contract, and breach of

16  covenant claims as set forth in the SAC's First, Second and Third Causes of Action.

17  Defendants re-argue their previous position, contending the Court's ruling constituted

18  "clear error."

19         Plaintiffs contend that Defendants have made a deficient motion for

20  reconsideration, failing to establish any of the bases for reconsideration—namely newly

21  discovered evidence or an intervening change in controlling law.  Defendants, instead,

22  rely on the proposition that a court may reconsider its prior rulings to correct clear error.

23  Lennar Mare Island, LLC v. Steadfast Ins. Co., No. 2:12-CV-02182, 2014 WL 2002204,

24  at *3 (E.D. Cal. May 15, 2014) (finding reconsideration "appropriate where . . . it is

25  necessary to correct clear error").

26         While the Court may reconsider its previous rulings, "[r]econsideration is an

27  'extraordinary remedy' that is to be used 'sparingly.'" Quinn v. Fresno Cty. Sheriff,

28  No. 1:10-CV-01617, 2012 WL 2839648, at *2 (E.D. Cal. Jul. 10, 2012) (quoting Kona

                                                            6

1   Enters. v. Estate of Bishop, 229 F.3d 887, 890 (9th Cir. 2000).  "To succeed, a party

2   must set forth facts or law of a strongly convincing nature to induce the court to reverse

3   its prior decision."  Id. (quoting United States v. Westlands Water Dist., 134 F. Supp. 2d

4   1111, 1131 (E.D. Cal. 2001).  "Mere dissatisfaction with the court's order, or belief that

5   the court is wrong in its decision, is not grounds for relief under Rule 60(b)."  Joe Hand

6   Promotions, Inc. v. Rangee, No. 2:13-CV-00939, 2013 WL 6859001, at *2 (E.D. Cal.

7   Dec. 24, 2013) (quoting Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338,

8   1341 (9th Cir. 1981).  "A district court may properly deny a motion for reconsideration

9   that simply reiterates an argument already presented by the petitioner."  Id. (quoting

10   Marazit v. Thorpe, 52 F.3d 252, 255 (9th Cir. 1995).

11        Defendants' Motion merely repeats facts and reiterates arguments made in

12   Defendants' first motion to dismiss.  This does not satisfy the clear error standard.

13   Reconsideration due to clear error occurs only when the court is left with "a definite and

14   firm conviction that a mistake has been committed."  Husain v. Olympic Airways,

15   316  F.3d 829, 835 (9th Cir. 2002) (quoting Easley v. Cromartie, 532 U.S. 234, 242

16   (2001)).  Nothing in Defendants' new Motion to Dismiss has demonstrated that any such

17   mistake was committed in the Court's prior ruling.  The Court previously addressed all

18   the issues Defendants raise in their pending Motion to Dismiss in detail.  See ECF No.

19   17, at 6–11.  Accordingly, Defendants' request that the Court reconsider its prior ruling

20   with respect to Plaintiffs' rescission, breach of contract, and breach of the implied

21   covenant claims is DENIED.

22        **B.    Breach Of Fiduciary Duty**

23        To properly put forth a claim for breach of fiduciary duty, a plaintiff must plead:

24   (1) facts plausibly showing the existence of a fiduciary relationship, (2) breach of that

25   fiduciary relationship, and (3) damage proximately caused by that breach.  Knox v.

26   Dean, 205 Cal. App. 4th 417, 432 (2012).

27        The Court dismissed Plaintiffs' breach of fiduciary duty claim as pleaded in their

28   FAC because Plaintiffs did not present any specific allegations as to how Defendants

7

1   owed them a fiduciary duty, or how the seller and buyer relationship between Plaintiffs

2   and Defendants—which does not ordinarily produce a fiduciary relationship—could have

3   created that fiduciary duty.  Defendants contend that Plaintiffs' SAC has not done

4   nothing to rectify those deficiencies.  The Court disagrees; Plaintiffs have alleged an

5   abundance of new facts to support their claim.

6        Plaintiffs claim a fiduciary duty exists due to the agency and subagency

7   relationships created with RC Management and with Cobalt.  A fiduciary relationship

8   arises between parties to a transaction where one of the parties has assumed a duty to

9   act with the utmost good faith and for the benefit of the other party.  Gilman v. Dalby,

10  176 Cal. App. 4th 606, 614 (2009).  A fiduciary duty may be imposed as a matter of law

11  based on the nature of the relationship.  See Cleveland v. Johnson, 209 Cal. App. 4th

12  1315, 1339 (2012) (describing joint ventures, partnerships, and agencies as illustrative

13  examples of relationships in which fiduciary duties are imposed by law).  Plaintiffs allege

14  that under the Management Agreement, RC Management was appointed to act on

15  behalf of the Club Interest Association and its members as the exclusive operating entity

16  of the property and to manage the daily affairs of the Club.  SAC, ¶¶ 74, 75.  RC

17  Management then proceeded to delegate absolute managerial authority and control over

18  Plaintiffs' use of the Club Interest Units to its subagent Cobalt.  Id. ¶ 78.

19       Initially, Defendants counter by citing the terms of the Management Agreement

20  itself, which contains express disclaimer provisions that bar any agency relationship from

21  being imputed.  Those provisions, however, only bar an agency relationship between the

22  signing parties.  Plaintiffs were not parties to the Management Agreement, and instead

23  possess only an ownership agreement in fractional units governed by the Agreement.

24  Consequently, the disclaimer language is not binding upon them.

25       Plaintiffs also claim that a fiduciary duty was triggered when the Management

26  Agreement gave RC Management control not just over the common areas, but also

27  Plaintiffs' individually deeded property interests.  Id. ¶ 66.  Whether or not a fiduciary

28  duty exists depends on the surrounding facts and circumstances.  Ward v. Mgmt.

8

1   Analysis Co. Emp. Disability Ben. Plan, 135 F.3d 1276, 1284 (9th Cir. 1998).  Under

2   California law, the key factor is whether there is "control by a person over the property of

3   another."  Vai v. Bank of Am. Nat'l Trust & Ass'n, 56 Cal. 2d 329, 338 (1961).  Plaintiffs

4   have pleaded exactly that—RC Management had control over their individually deeded

5   property interests.

6       Plaintiffs have pleaded sufficient facts to survive a motion to dismiss under either

7   of their agency theories.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' breach of

8   fiduciary duty claim, as set forth in the SAC's Third Cause of Action, is DENIED.

9           **C.    Violation Of UCL**

10      Under the Unfair Competition Law ("UCL") a court may enjoin any person or entity

11  engaging in unfair competition.  Cal. Bus. & Prof. Code § 17203.  The UCL creates

12  "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or

13  fraudulent."  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012).  In

14  their Fifth Cause of Action, Plaintiffs allege Defendants violated both the UCL's

15  "unlawful" and "unfair" prongs.  Defendants move to dismiss on grounds that Plaintiffs

16  have failed to identify any predicate "unlawful" or "unfair" acts.  As set forth below, the

17  Court concludes that Plaintiffs have at least met their pleading burden under the

18  "unlawful" prong, and so declines to address Plaintiffs' allegations of "unfair" acts.

19      "[A] violation of another law is a predicate for stating a cause of action under the

20  UCL's unlawful prong."  Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544,

21  1554 (2007).  Plaintiffs satisfy this predicate by alleging that Defendants violated

22  California Business & Professions Code Section 11252.  Section 11252 prohibits

23  developers from "materially encumbering" the use rights of timeshare purchasers without

24  the written assent of at least fifty-one percent of the timeshare interest owners other than

25  the developer.  Cal. Bus. & Prof. Code § 11252.

26      Plaintiffs allege the MVC Affiliation constituted such an encumbrance in causing

27  the value of their fractional units to utterly collapse.   Defendants, however, claim that the

28  MVC Affiliation does not fit the definition of "encumbrance" as defined in the state.  See

9

1   id. §§ 11226, 11244, 11255.  Defendants further argue that even if the MVC Affiliation is

2   an encumbrance, they have not <u>materially</u> encumbered Plaintiffs' rights because there is

3   no linkage between the valuation of Plaintiffs' fractional interests and their "use rights."

4            The Court previously found that the FAC contained "no basis, beyond speculation,

5   as to the value of Plaintiffs' fractional interests."  ECF No. 17, at 16:4-5.    As stated

6   above, however, the SAC alleges that Plaintiff Reiser contacted two Lake Tahoe real

7   estate agents inquiring about selling his fractional units.  Killen, a real estate agent at the

8   Northstar Office of Tahoe Mountain Realty, told Reiser that there were no pending

9   listings for the Ritz Carlton fractional units other than a two bedroom house on the

10  market for $5,000.00, with "all other listings either expired or . . . cancelled."  SAC, ¶ 62.

11  A second real estate agent, Drury at Padden Properties, similarly indicated that the Ritz

12  Carlton fractional interests "have lost nearly ALL value," explaining that "[i]t is clear

13  there's no market for this product at all."  <u>Id.</u>

14           Defendants contend that even accepting the results of these inquiries at face

15  value, none of the information obtained shows a linkage to the MVC Affiliation or to

16  Plaintiff Reiser's "use rights."  Plaintiffs, however, need only provide enough "[f]actual

17  allegations . . . to raise a right to relief above the speculative level.  <u>Twombly,</u> 550 U.S. at

18  555.  By alleging that the MVC Affiliation diluted the value of Plaintiffs' fractional

19  interests, and alleging that the value of those interests plunged to virtually nothing,

20  Plaintiffs' SAC satisfies that standard.

21           Although Defendants further argue that Plaintiffs' UCL claim must be dismissed

22  on grounds that they failed to substantively oppose Defendants' motion, that argument is

23  also misplaced.  Plaintiffs have opposed Defendants' arguments within the allegations of

24  the SAC itself.  They have alleged a violation of Section 11252 on grounds that the MVC

25  Affiliation materially encumbered their use rights when the value of their fractional

26  interests collapsed.

27  ///

28  ///

1  The Court must accept all allegations of material fact as true and construe them in

2  the light most favorable to the nonmoving party, and Plaintiffs have included enough

3  facts to plausibly state a claim to relief.  Accordingly, Defendants' Motion to Dismiss

4  Plaintiffs' UCL claim is DENIED.

5  **D.  Aiding And Abetting**

6  A claim for aiding and abetting requires a plaintiff to establish an underlying tort

7  that was "aided and abetted."  In re Mortgage Elec. Registration Syst., Inc., 754 F.3d 772,

8  786 (9th Cir. 2014).  In the SAC, Plaintiffs have pleaded an underlying tort: breach of

9  fiduciary duty.  See SAC, ¶¶ 119-122.

10  Defendants contend that Plaintiffs' aiding and abetting claim is insufficiently

11  pleaded because this underlying tort was insufficiently pleaded.  However, as set forth

12  above, Plaintiffs' breach of fiduciary claim is properly pleaded.

13  Turning to the substance of Plaintiffs' aiding and abetting claim, the factual

14  allegations offered in the SAC are enough to raise their right to relief to beyond mere

15  speculation as required under Twombly and Iqbal.  Plaintiffs allege that Defendants

16  devised a three-prong plan to solve their unsold inventory problem.  First, Defendants

17  secretly de-annexed seventeen of the twenty-eight Club Interest Units and sold them as

18  non-fractionalized, regular condominium units.  SAC, ¶ 4.  Second, Defendants

19  implemented the MVC Affiliation, which devalued the Fractional Units.  Id. ¶ 5.  Third,

20  Defendants discontinued any meaningful effort to continue selling fractional units.  Id.

21  ¶ 6.  The Court finds that these allegations are sufficient to support a claim of aiding and

22  abetting.

23  Accordingly, Defendants' Motion to Dismiss Plaintiffs' aiding and abetting claim,

24  as set forth in the Sixth Cause of Action, is also DENIED.

25  ///

26  ///

27  ///

28  ///

1

**CONCLUSION**

2

3        For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Second

4   Amended Complaint, for failure to state a claim pursuant to Rule 12(b)(6), ECF No. 21, is

5   DENIED.

6        IT IS SO ORDERED.

7
    DATED:  February 10, 2017
8

9

10                                          _____
                                            MORRISON C. ENGLAND, JR
11                                          UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28