MICHAEL J. REISER, ESQ. (SBN 133621)
LILIA BULGUCHEVA, ESQ. (SBN 291374)
LAW OFFICE OF MICHAEL J. REISER
961 Ygnacio Valley Road
Walnut Creek, California 94596
Telephone: (925) 256-0400
Facsimile:  (925) 476-0304
Email: reiserlaw@gmail.com
Email: lilia.reiserlaw@gmail.com

TYLER R. MEADE, ESQ. (SBN 160838)
MELISSA RIESS (SBN 295959)
THE MEADE FIRM P.C.
1816 Fifth Street
Berkeley, CA 94710
Telephone: (510) 843-3670
Facsimile:  (510) 843-3679
Email: tyler@meadefirm.com
Email: melissa@meadefirm.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN BHAGAT and ANITA MANWANI, individually and as Trustees of the Bhagat Family Trust; JAY A. MORGESON and DONNA L. MORGESON; and JOSEPH TAN, individually and as Trustee of the Joseph Tan Revocable Trust,<br><br>Plaintiffs,<br><br>v.<br><br>MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation; MARRIOTT OWNERSHIP RESORTS, INC., a Delaware corporation d.b.a. Marriott Vacation Club International; RITZ-CARLTON DEVELOPMENT COMPANY, INC., a Delaware corporation; RITZ-CARLTON SALES COMPANY, INC., a Delaware corporation; RITZ-CARLTON | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) RESCISSION;**<br><br>**(2) BREACH OF CONTRACT;**<br><br>**(3) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**(4) BREACH OF FIDUCIARY DUTY;**<br><br>**(5) VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, *et seq.*; AND**<br><br>**(6) AIDING AND ABETTING**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

1  MANAGEMENT COMPANY, LLC,
   a Delaware limited liability company; THE
2  COBALT TRAVEL COMPANY, LLC, a
   Delaware limited liability company; and
3  DOES 1 THROUGH 50,

4              Defendants.

5

6          The following Plaintiffs bring this action based upon the investigation of counsel and

7  information and belief: Arjun Bhagat and Anita Manwani, individually and as Trustees of the

8  Bhagat Family Trust; Jay A. Morgeson and Donna L. Morgeson; and Joseph Tan, individually

9  and as Trustee of the Joseph Tan Revocable Trust (collectively, "Plaintiffs").  Plaintiffs bring this

10 action against the following Defendants: Marriott Vacations Worldwide Corporation; Marriott

11 Ownership Resorts, Inc., d.b.a. Marriott Vacation Club International; Ritz-Carlton Development

12 Company, Inc.; Ritz-Carlton Sales Company, Inc.; Ritz-Carlton Management Company, LLC;

13 and Cobalt Travel Company, LLC (collectively, "Defendants").

14                                 **INTRODUCTION**

15         1.      This lawsuit concerns the sale of fractional interests in the Ritz-Carlton Club,

16 Lake Tahoe, located in Truckee, California (the "Lake Tahoe Ritz").  This development consists

17 of 28 residential condominiums called "Club Interest Units"[1] that were fractionalized into 336

18 "Club Interests" (sometimes referred to as "Fractional Units" or "fractional interests").[2]

19         2.       Beginning in early 2009, Defendants sold 1/12th Fractional Units to Plaintiffs,

20 the plaintiffs in the related case of *Reiser, et al. v. Marriott Vacations Worldwide Corporation, et*

21 *al.* (Case No. 2:16-CV-00237-MCE-CKD) ("*Reiser v. Marriott*"),[3] and approximately 35 other

22 buyers.  The sales effort stalled as the economy deteriorated, and by 2011 Defendants devised a

---

[1]     The 28 "Club Interest Units" were created on June 9, 2008 as a result of the filing by the
Defendant Ritz-Carlton Development Company, Inc. of the "Declaration of Covenants,
Conditions and Restrictions and Reservations of Easements for the Highlands Resort West Parcel
Condominium" dated as of May 30, 2008 (the "Condominium Declaration").

[2]     The 336 "Club Interests" or "Fractional Units" were created on June 9, 2008 as a result of
the filing by the Defendant Ritz-Carlton Development Company, Inc. of the "Declaration of
Covenants, Conditions and Restrictions for the Highlands Resort West Parcel Club" dated as of
May 30, 2008 ("Club Interest Declaration").

[3]     The numbered paragraphs of this Complaint are identical to paragraphs in the Second
Amended Complaint in *Reiser v. Marriott*, except paragraphs 2, 15, and 41 herein, which have
been modified slightly, and paragraphs 22-25, which are specific to the plaintiffs in this action.

COMPLAINT

plan to monetize the unsold "developer inventory" of approximately 277 fractional units. However, this plan to monetize the "developer inventory" came at the expense of and caused significant injury to the Plaintiffs' property interests, as well as to the property interests of the buyers of Ritz-Carlton Destination Club Fractional Units worldwide. The monetization plan effectuated by Defendants required that the Defendants breach contractual promises, the implied covenant of good faith and fair dealing, and fiduciary duties owed to Plaintiffs (and to other Fractional Unit buyers).

3. The "solution" that Defendants devised to solve their problem of the unsold "developer inventory" had three prongs.

4. First, on or about November 18, 2011, Defendants announced that they had secretly de-annexed 17 of the 28 Club Interest Units from the Club Interest Declaration, and sold them as non-fractionalized, regular condominium units to an unnamed "well known developer in the Tahoe area." As a result of this secret de-annexation and sale, the number of fractional interests available for sale to potential Fractional Unit buyers was decreased by 204 Fractional Units, from 336 to 132. Among other harm, this caused a significant increase in the annual dues that Plaintiffs must pay each year, the loss of the Ritz Club "members lounge," and the loss of a substantial portion of the common area available to fractional owners.

5. Second, on July 17, 2012, to address their problem of unsold Fractional Units at various Ritz-Carlton Destination Club properties, Defendants announced a new "external exchange affiliation" (sometimes referred to herein as a "merger") between Ritz-Carlton Destination Club (a.k.a. Ritz-Carlton Membership Program) and the Marriott Vacation Club, a much larger, less exclusive, and less expensive competing product managed, owned, and promoted by Defendants. As a result of this new affiliation, Marriott Vacation Club members can spend just as many days at the Lake Tahoe Ritz as Plaintiffs can – 21 days – and do so at a fraction of the cost. Participants in the Marriott Vacation Club pay roughly 60% of what Plaintiffs paid up front and pay roughly a third of what Plaintiffs pay in annual dues.

6. Third, the Defendants discontinued any meaningful effort to continue to sell fractional interests at the Lake Tahoe Ritz, opting instead to market their competing Marriott

Vacation Club product to Plaintiffs' detriment. The cessation of sales efforts was undertaken so that the "developer inventory" that the Defendants could not de-annex and sell outright could be utilized by the Defendants as inventory to be used by Marriott Vacation Club members, thereby causing the Ritz-Carlton Destination Club Fractional Units to become obsolete and worthless.

7. Defendants' conduct was designed solely for the benefit of the Defendants, and in fact was injurious to the property rights of Plaintiffs, causing the market for fractional interests at the Lake Tahoe Ritz to collapse. The fractional interests that Plaintiffs purchased for premium prices are now worth nothing. Nobody will agree to buy these fractional interests when they can enjoy the same access for so much less in both purchase price and annual costs. Plaintiffs who have attempted to sell their units have been unable to do so.

8. To add insult to injury, Plaintiffs bear a disproportionate cost of the wear and tear caused by the de-annexation of the Fractional Units as well as the flood of Marriott Vacation Club members at the Lake Tahoe Ritz because operational costs are now spread among the owners of just 59 Fractional Units rather than 366 Fractional Units that would exist if Defendants had carried through with their fiduciary obligation to market and sell all fractional interests. Plaintiffs bear this increased cost while their access to the Lake Tahoe Ritz is curtailed by the influx.

9. The conduct described above constitutes a breach or breaches of both the standardized Purchase Agreement and the Club Interest Declaration, which the Purchase Agreement incorporated and was governed by. This conduct also breached the covenant of good faith and fair dealing implied in those agreements.

10. Defendants, including Defendant Marriott Vacations Worldwide Corporation and its subsidiaries, have engaged in a broad pattern of self-dealing and breaching the fiduciary duties that they assumed toward Plaintiffs. Though the sources of these duties vary somewhat, they all flow from the fact that governing documents gave an entity called the "Club Interest Association" near complete control over Plaintiffs' separately deeded fractionalized interests. Just as a typical homeowners association owes a fiduciary duty to exercise its near absolute control over *common areas* for the benefit of individual condominium owners, Defendants here

owed a fiduciary duty to exercise their near absolute control over *Plaintiffs' separately-deeded fractional interests* for the benefit of Plaintiffs.  In each case, control over the property of another gives rise a fiduciary duty to manage that property for the benefit of its owners.[4]

11.    Ritz-Carlton Development Company, Inc. ("RC Development") assumed the Club Interest Association's control-based fiduciary duty by retaining control over that association through the appointment of its employees or agents to a majority of the board member positions to the Club Interest Association board of directors.[5]  Ritz-Carlton Management Company, Inc. ("RC Management"), an affiliate of RC Development,[6] assumed these same duties by contractually agreeing with the Club Interest Association to be the manager of the fractional units, with near absolute authority over almost every aspect of their use.  These fiduciary duties are shared by Cobalt Travel Company, LLC ("Cobalt") because RC Management delegated its sweeping authority to Cobalt such that Cobalt became RC Management's subagent.[7]  The other defendants aided and abetted the breach of fiduciary duties by these three defendants.

12.    Defendants breached these fiduciary duties by using the Club Interest Association to profit at Plaintiffs' expense while gutting the value of the fractional interests that they sold to Plaintiffs.  The Defendant-controlled Club Interest Association authorized, ratified and/or acquiesced to: (a) the de-annexation of the 17 units that Defendants peeled off from the

---

[4]    *See Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 56 Cal.2d 329, 338 (1961) ("The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another"); 34A Cal. Jur. 3d Fraud and Deceit § 13 (same); *United States v. Wilson*, 881 F.2d 596, 599 (9th Cir. 1989) ("A fiduciary relationship will 'arise[ ] when the Government assumes ... control over ... property belonging to Indians'").

[5]    *See Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*, 114 Cal.App.3d 783, 799-800 (1981) (holding developer owes fiduciary duties while it controls association board and stating, "Thus, a developer and his agents and employees who serve as directors of an association . . . may not make decisions for the Association that benefit their own interests at the expense of the association and its members"); *Cohen v. S & S. Construction Co.*, 151 Cal.App.3d 941, 945 (1983) ("This fiduciary duty extends to individual homeowners, not just the homeowners association").

[6]    The RC Development signed the management agreement on May 16, 2008 as RC Management's sole member.

[7]    *See Streit v. Covington & Crowe*, 82 Cal.App.4th 441, 446, fh. 3 (2000) ("if an agent is authorized by the principal to employ a subagent, the subagent owes the same duties to the principal as does the agent"); *Sequoia Vacuum Systems v. Stansky*, 229 Cal.App.2d 281, 287 (1964) ("Every agent owes his principal the duty of undivided loyalty.  During the course of his agency, he may not undertake or participate in activities adverse to the interests of his principal").

fractional offering and sold as condominiums; and (b) the decision to give members of the Marriott Vacation Club access to the Lake Tahoe Ritz through the merger between that club and the Ritz-Carlton Destination Club. In addition, the Defendant-controlled Club Interest Association steadily increased the annual dues that Plaintiffs must pay. The inflated annual dues subsidize Defendants' decision to open up access to the Lake Tahoe Ritz to members of the Marriott Vacation Club.

13. The above conduct also violates California's Unfair Competition Law ("UCL") in that Cal. Bus. & Prof. Code § 11252 prohibits developers from materially encumbering the use rights of time-share purchasers without the written assent of at least 51% of the timeshare interest owners other than the developer. *See* Cal. Bus. & Prof. Code §§ 17200 *et seq*. Under the law of restitution applicable to the UCL claim, Plaintiffs are entitled to all funds that Defendants obtained by means of unfair competition and unlawful business practices – including the substantial purchase prices that Plaintiffs paid and the tens of thousands of dollars in annual dues paid thereafter.

14. Plaintiffs are entitled to rescind their Purchase Contracts based on material mistake of fact, whether Defendants' conduct was intentional, negligent, or entirely innocent. In rescission, Defendants must return all consideration paid to them by Plaintiffs, including the purchase price for each fractional interest and all subsequent annual fees. *See* Cal. Civ. Code §§ 1691(b)(1). Plaintiffs are also entitled to consequential damages in rescission, including but not limited to the loss of the time value of their money. *See* Cal. Civ. Code § 1692.

**JURISDICTION AND VENUE**

15. Jurisdiction in this court is proper under 28 U.S.C. § 1332 because there is diversity of citizenship and an amount in controversy greater than $75,000. Venue is proper pursuant to 28 U.S.C. § 1391 because the property at issue in this complaint is located in this district.

**DEFENDANTS**

16. Defendant Ritz-Carlton Development Company, Inc. ("RC Development") is a Delaware corporation and the seller of the fractional interests at issue. RC Development has a

principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. It is a wholly-owned Marriott subsidiary, and also is the sole owner, manager, and member of Defendant Cobalt.

17. Defendant Ritz-Carlton Sales Company, Inc. ("Ritz-Carlson Sales") is a Delaware corporation, has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. At all relevant times, Ritz-Carlton Sales was a wholly-owned Marriott subsidiary, acted as a sales broker, and was otherwise involved in and responsible for the marketing and sale of the fractional interests at issue.

18. Defendant Ritz-Carlton Management Company, LLC ("RC Management"), another wholly-owned Marriott subsidiary, is a Delaware limited liability company. RC Management also has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. At all relevant times, RC Management was the manager and operator of the Lake Tahoe Ritz and the other Ritz-Carlton-branded properties included in the Ritz-Carlton Membership Program.

19. Defendant Cobalt Travel Company, LLC ("Cobalt"), formerly known as the Ritz-Carlton Travel Company, LLC, is a Delaware limited liability company, has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. Cobalt is a wholly-owned subsidiary of RC Development. RC Management entered into an Affiliation Agreement with Cobalt pursuant to which the Lake Tahoe Ritz and by extension its various fractional owners, including Plaintiffs, became affiliated with and/or members of the Ritz-Carlton Membership Program. Cobalt is the Program Manager of the Ritz-Carlton Membership Program and also operates the reservation system through which Plaintiffs obtained use of their allotted number of days at the Lake Tahoe Ritz and obtain access to the other facilities in the Ritz-Carlton Membership Program.

20. Defendant Marriott Ownership Resorts, Inc., d.b.a. Marriott Vacation Club International ("Marriott Ownership Resorts") is a Delaware corporation, and a wholly-owned subsidiary of Marriott. It has a principal place of business at 6649 Westwood Boulevard,

///

Orlando, Florida, and is authorized to do business in California. Marriott Ownership Resorts was involved in and responsible for the wrongful conduct alleged herein.

21. Defendant Marriott Vacations Worldwide Corporation ("Marriott Vacations Worldwide") is a publicly-traded Delaware corporation with a principal place of business at 6649 Westwood Boulevard, Orlando, Florida. Marriott Vacations Worldwide is the parent company of the other Defendants and was involved in and responsible for the wrongful conduct alleged herein.

22. Collectively, Marriott Ownership Resorts and Marriott Vacations Worldwide are referred to herein as Marriott.

23. The true names and capacities of the Defendants DOES 1 through 50, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs at the time of filing this Complaint and Plaintiffs, therefore, sue said Defendants by such fictitious names and will ask leave of court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiffs are informed and believe, and therefore allege, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to Plaintiffs as herein alleged.

24. Plaintiffs are informed and believe, and on that basis allege, that each Defendant named in this action, including each of the DOE defendants, was the agent, ostensible agent, servant, aider and abettor, co-conspirator, partner, joint venturer, representative and/or associate of each of the other Defendants, and was at all times relevant herein acting within the course and scope of his, her or its authority as agent, ostensible agent, servant, aider and abettor, co-conspirator, partner, joint venturer, representative and/or associate, and with the knowledge, authorization, consent, permission, and/or ratification of the other Defendants. On information and belief, all actions of each Defendant alleged herein were ratified and approved by the officers and/or managing agents of each other Defendant, whether DOE or otherwise.

**PLAINTIFFS**

25. Plaintiffs Arjun Bhagat and Anita Manwani are competent adult residents of Los Altos, California and Trustees of the Bhagat Family Trust ("the Bhagat/Mawani

COMPLAINT

Plaintiffs"). Pursuant to a Purchase Contract they signed on or about October 29, 2009, the Bhagat/Mawani Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4108 for $158,500.00

26. Plaintiffs Jay A. Morgeson and Donna L. Morgeson are competent adult residents of Cincinnati, Ohio. Pursuant to a Purchase Contract they signed on or about October 29, 2009, they purchased an undivided 1/12th interest in Club Interest Unit No. 4303 for $223,500.00.

27. Plaintiff Joseph Tan is a competent adult resident of Palo Alto, California and Trustee of the Joseph Tan Revocable Trust ("the Joseph Tan Plaintiffs"). Pursuant to a Purchase Contract he signed on or about May 2, 2013, the Joseph Tan Plaintiffs purchased an undivided 1/12th interest in Club Interest Unit No. 4305 for $ 167,319.24.

28. As a condition of purchase and ownership, Plaintiffs were enrolled in the Ritz-Carlton Membership Program (a.k.a. Ritz-Carlton Club) pursuant to which they were allowed access to other participating resorts and clubs.

## GENERAL ALLEGATIONS

29. Ritz-Carlton is a highly valued brand associated with the Ritz-Carlton Hotel Company, which develops, sells, operates and manages luxury properties all over the world. Over the years, the Ritz-Carlton has become the preferred hotel company among luxury hotel chains based in large part on the prestige of its brand, luxurious amenities, and outstanding service. The Ritz-Carlton brand is now owned and/or controlled by Defendant Marriott.

30. In or about December 2009, RC Development completed the construction of Phase 1 (consisting of 28 residential Units) at the Lake Tahoe Ritz, located at 13051 Ritz-Carlton Highlands Drive, Truckee, California. A Final Time-Share Plan Public Report ("Public Report") was issued on June 12, 2008, and amended May 10, 2010.

31. RC Development represented that it would sell 1/12th fractional interests in the 28 Club Interest Units, or in other words 336 Fractional Units. Plaintiffs reasonably believed that Defendants promised to market and sell that number, or at least a sufficient to make the Lake Tahoe Ritz fractional offering viable. Yet Defendants sold less than 60 before abandoning marketing and sales efforts. Defendants even closed the sales office at the Lake Tahoe Ritz.

COMPLAINT

32.     Next, Defendants de-annexed the 17 Club Interest Units.  A November 18, 2011 notice to Plaintiffs (and other fractional owners) reads in pertinent part:

> "On behalf of the Ritz-Carlton Club, Lake Tahoe, we would like to take the opportunity to inform you that a well known developer in the Tahoe area has recently purchased 17 residences in our building to convert to whole ownership residences in the undeveloped property adjacent to the Club.  The confidentiality associated with this transaction precluded us from informing you of the sale before it was finalized.... [¶]  Secondly, due to the decreased number of residences that will be a part of the Club budget, there likely will be some financial impact."

33.     The cessation of all sales efforts and the de-annexation of the 17 Club Interest Units and sale of those units as non-fractionalized condominiums was a breach of promises made in: (a) the Club Interest Declaration; (b) the Purchase Agreement, which specifically incorporated the Club Interest Declaration and must be interpreted consistent with it; and (c) the Public Report.

34.     The November 18, 2011 notice also advised: "the purchase included the residence where the current Members' Lounge was located.  Due to the whole ownership conversion of the residence, we are in the process of relocating the Members' Lounge and will be providing complimentary beverages while our new lounge is under construction...."  The new lounge was a substandard replacement, far smaller and far less desirable than the original one.

35.     Defendants also breached their promise that fractional owners would be able to protect their substantial investments by controlling the Club Interest Association.  Defendants used their control over the Club Interest Association board to accomplish the wrongful conduct alleged herein, all to Plaintiffs' detriment.  Among other things, they ratcheted up the annual dues until the annual cost of the 21 days of use makes no economic sense.  When annual dues are factored in, the per-night occupancy cost is approximately $1,000 for most buyers (and just a little less for the others), excluding the time value of the money they used to purchase their fractional interest.

36.     Defendants represented that Plaintiffs and other buyers would have access to sought-after resorts, such as the Ritz-Carlton Destination Club in Bachelor Gulch, Colorado and

the Ritz-Carlton Destination Club in Jupiter, Florida, through the Ritz-Carlton Destination Club (a.k.a. Ritz-Carlton Membership Program).  But Defendants later removed some of the most desirable resorts from this program and/or caused other facilities to remove themselves from the program.  Both the Ritz-Carlton Destination Club Property at Bachelor Gulch Colorado and the Ritz-Carlton Destination Club Property at Jupiter, Florida voted to terminate their respective management agreements with the RC Management, and consequently, their affiliation agreements with the Ritz-Carlton Destination Club, as a direct result of misconduct described herein.

37.     At the same time, Defendants have diluted the exclusive nature of the Lake Tahoe Ritz and the Ritz-Carlton Membership Program through a merger with a much larger, less exclusive program.  On or about July 17, 2012, Defendants announced their intention to "affiliate" the Ritz-Carlton Destination Club with the Marriott Vacation Club destinations.  In 2014, Defendants used their control over Cobalt, the "Program Manager" of the Ritz-Carlton Destination Club, to effectuate this merger, which required Cobalt's agreement.

38.     Now, many thousands of Marriott Vacation Club members — who paid approximately a third of the purchase prices and pay approximately a third of the annual fees — have access to resorts that were formerly only available to Plaintiffs and other Ritz-Carlton Club members.

39.     As one would expect of rational economic actors, these new members have availed themselves of the superior Ritz-Carlton facilities.  As a result of this dilution, Plaintiffs have had difficulty obtaining the full 21 days of use they purchased for each 1/12th interest.

40.     Further, as a result of the Marriott Vacation Club "merger" and the other misconduct alleged herein, Defendants have violated Cal. Bus. & Prof. Code § 11252 by "encumber[ing] the accommodations of the time-share plan in a manner that [] materially and adversely affect[s] the use rights of the [Plaintiffs] without the written assent of not less than 51 percent of the time-share interest owners other than the developer."  Cal. Bus. & Prof. Code § 11252.  Plaintiffs are now unable to sell their units.

41.     Fractional owners have been unable to sell their units.  For example, in May 2015, Thomas F. Reiser, Jr. ("Reiser"), another fractional owner and a plaintiff in *Reiser v. Marriott*,

COMPLAINT

contacted real estate agent Liza Killen ("Killen") of the Northstar Office of Tahoe Mountain Realty to inquire about selling his Fractional Unit. On May 19, 2015, Reiser emailed Killen asking: "Any resale action on the Ritz Carlton Fractionals?" On the same day, Killen responded: "Nothing. There's a winter 2 br plus den on the market for $5k. All other listings either expired or been cancelled."

42. In May 2016, Reiser contacted a second Northstar real estate agent Sam Drury of Padden Properties to again inquire about selling his Fractional Interest. Mr. Drury replied: "Thanks for your inquiry of fractional ownerships in Northstar. . . [In the last two years], only one such property has sold from the . . . Ritz Carlton Club - a 2 bedroom, 2.5 bath residence was listed and sold for $5,000 on 17 December 2015. In my many years' experience of Northstar area real estate, this particular property may have suffered the worst of economic setbacks. Shares that sold for more than $200,000 have lost nearly ALL value. . . The only inquiries we ever receive on the single sale were quickly dismissed when the buyers learned the dues amount and usage structure. It is clear there's no market for this product at all." (Capitalization in the original.)

43. As a result of these actions, Plaintiffs have been severely injured. Plaintiffs must continue to pay the higher annual dues or lose their use privileges and face litigation. Selling is not an option. There is no market for these units, and certainly no way to recoup anything close to the substantial purchase prices.

44. Defendants have described the Membership Program as being "appurtenant" to the deed, meaning it continues for as long as the corresponding ownership interest lasts. Plaintiffs do not have the option of cancelling their membership. The Purchase Contract further provides: "membership in the [Ritz-Carlton] Membership Program may not be partitioned from ownership of a Club Interest." Thus, Plaintiffs must continue to pay their annual dues (which include the membership program dues) for as long as they own their property. They cannot terminate that obligation without ridding themselves of their deeds, but no one is willing to buy them, and Defendants only agree to take them back when it serves their interests, and in many instances it does not serve their interests to do so.

///

**SOURCES OF FIDUCIARY DUTIES**

**Overview**

45.     In a condominium without fractional units, the scope of a condominium association's fiduciary duties is circumscribed by the fact that the condominium association's authority covers only common areas and does not extend into control over the individual units.[8] Here, however, a distinct set of governing documents establishing a *second* association, the *Club Interest Association,*[9] and grants that entity (and by extension its designated agents, including RC Management and Cobalt) authority over the separately-deeded property interests (not just common areas) that each individual fractional owner purchased.  The scope of the fiduciary duties at issue here is, therefore, different from the normal condominium context because the scope of the Club Interest Association's authority over each Plaintiffs' fractional property interest is more extensive.

46.     The Club Interest Declaration empowers the Club Interest Association with all powers necessary to ensure the proper functioning of each individual Club Interest Unit (fractional unit), and the power to delegate that authority to a professional management company.  The "Governing Instruments" include the Declaration of Covenants, Conditions and Restrictions for the Highlands Resort West Parcel Club dated May 30, 2008 ("Club Interest Declaration"), the Articles of Incorporation for Highlands Resort West Parcel Club, ("Articles"), the Bylaws for Highlands Resort West Parcel Club, ("Bylaws"), Rules and Regulations for Highlands Resort West Parcel Club, and the Membership Program Affiliation Agreement, ("Affiliation Agreement").[10]

47.     On May 16, 2008, the Club Interest Association formed and controlled by the developer through the appointment of its employees and agents as directors,[11] entered into the

---

[8]     *See, e.g.,* the Condominium Declaration in this case.

[9]     *See* Club Interest Declaration.

[10]     *See* Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for the Highlands Resort West Parcel Club, recorded June 9, 2008, paragraph 1.53.

[11]     Articles of Incorporation for the Nonprofit Mutual Benefit Corporation, "Highlands Resort Club Association, Inc., signed on May 5, 2008, and filed with the California Secretary of State on June 3, 2008, provide that the association was formed "to manage a fractional interest development located in Placer County, California to be known as Ritz-Carlton Club, Lake Tahoe"

"Highlands Resort Club Association Operating Agreement" with the developer's affiliate, the

Ritz-Carlton Management Company. This operating agreement clearly establishes that the RC

Management is acting for the benefit and as the agent of both the Club Interest Association and

its members, the Plaintiffs herein. Pursuant to its contractual and statutory authority to hire

subagents, RC Management, in turn, delegated significant managerial authority and control over

Plaintiffs' use of their Club Interest Units to its sub-agent, Cobalt, which is another affiliate of

the developer. These agency and sub-agency arrangements give rise to fiduciary duties.[12]

48.     Via the Management Agreement, Affiliation Agreement, and other governing

documents and the appointment by RC Development of its employees and agents to the Club

Interest Association board, RC Development and its affiliates, RC Management and Cobalt, have

attained near complete control over the fractional interests and appurtenant membership benefits

that Plaintiffs purchased. This sweeping control over Plaintiffs' deeded property interests,

including appurtenant membership benefits, gives rise to fiduciary duties.[13]

49.     Plaintiffs retained only two powers. The first one is limited and underscores the

authority granted to Defendants: Plaintiffs retained the right to use a unit for 21 days, but only if

they followed the procedures applicable to a reservation system operated by Cobalt. Second,

Plaintiffs, as members of the Club Interest Association, could vote to terminate RC Management

and with it, Cobalt. But doing so would mean the loss of the Ritz-Carlton brand attached to their

fractional interests, and also result in their expulsion from the Ritz-Carlton Membership Program.

**The Developer, RC Development, Retained Control over the Association**

50.     Through the Club Interest Declaration, the developer/declarant RC Development

intended to "establish a common scheme and plan for the use, enjoyment, repair, maintenance,

---

and "To manage, operate and maintain the fractional program of a high quality, first-class resort
condominium in accordance with the Declarations of Covenants, Conditions and Restrictions for
the Highlands Resort West Parcel Club."

[12]     *See Streit*, 82 Cal.App.4th at 446, n. 3 ("if an agent is authorized by the principal to
employ a subagent, the subagent owes the same duties to the principal as does the agent");
*Sequoia Vacuum Systems*, 229 Cal.App.2d at 287 ("Every agent owes his principal the duty of
undivided loyalty. During the course of his agency, he may not undertake or participate in
activities adverse to the interests of his principal").

[13]     *See Vai*, 56 Cal.2d at 338 ("The key factor in the existence of a fiduciary relationship lies
in control by a person over the property of another").

- 14 -

restoration and improvement of the Club Interest Development and Common Furnishings and the interests therein conveyed" and expressly declared the governing documents to be in furtherance of "enhancing the desirability and enjoyment of the Club Interest Development, and the interest or interests therein to be conveyed."[14]

51.     RC Development and its alter egos and/or successors owe fiduciary duties to Plaintiffs because, through all relevant times herein, they have retained control over the Club Interest Association through the appointment of developer-affiliated directors to the Club Interest Association Board of Directors. As such, the Club Interest Association and the developer, RC Development, at all relevant times herein owed Plaintiffs a fiduciary duty to operate the Club Interest Association and manage Plaintiffs' fractional interests for the benefit of and with loyalty towards Plaintiffs, not the developer or Marriott Vacations Worldwide or any other Defendant.[15]

**The Management Agreement Creates a Fiduciary Duty for RC Management**

52.     The Club Interest Declaration, Section 4.3 provides: "The Club Interest Association shall have the authority to engage and the obligation to use its best efforts to engage and maintain a reputable firm as the Operating Manager for the Club Interest Development and as Program Manager for the operation of the Membership Program." Indeed, given the complexities involved in managing fractional units, California law *mandates* that the Club Interest Association hire a professional management company, and further establishes the authority of the professional management company to hire sub-agents.[16]

53.     On May 16, 2008, the Club Interest Association entered into the "Highlands Resort Club Association Operating Agreement" with its affiliate, the RC Management. Pursuant to paragraph 2 therein, captioned "Appointment and Acceptance of Operator Agency," RC

---

[14]     *See* Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for the Highlands Resort West Parcel Club, recorded June 9, 2008, page 2.
[15]     *See Raven's Cove Townhomes*, 114 Cal.App.3d at 799-800 (holding developer owes fiduciary duties while it controls association board and stating, "Thus, a developer and his agents and employees who serve as directors of an association . . . may not make decisions for the Association that benefit their own interests at the expense of the association and its members"); *Cohen v. S & S. Construction Co.*, 151 Cal.App.3d at 945 ("This fiduciary duty extends to individual homeowners, not just the homeowners association").
[16]     *See* Cal. Bus. & Prof. Code § 11267(a)(2).

Management agreed "to act on behalf of the Club Association *and its members* as the exclusive operating entity of the Club and to manage the daily affairs of the Club." (Emphasis added.)

54. On March 19, 2010, the Club Interest Association entered into the "Highlands Resort Club Association *First Amended* and Restated Operating Agreement" ("Management Agreement") with its affiliate, the RC Management. Pursuant to paragraph 3 therein, captioned "Appointment and Acceptance of Operator," RC Management agreed "to act on behalf of the Club Association *and its members* as the exclusive operating entity of the Club and to manage the daily affairs of the Club." (Emphasis added.)

55. Both the original and the amended and restated Management Agreements, in paragraphs 3.2 and 4.2 respectively, provide that if the "Club Association is terminated, then the owners of Club Interests ("Club Interest Owners") shall, as to their separate interests, *continue to be a party to this agreement and bound by the provisions hereof*, and the Operating Company shall manage such interests pursuant to the provisions of this Agreement . . . ." (Emphasis added.)

56. Paragraph 5 of the Management Agreement, captioned "Delegation of Authority," provides: "[RC Management], on behalf of and at the expense of, the Club Association, to the exclusion of all other persons including the Club Association and its members, shall have all the powers and duties of the Board of Directors of the Club Association (the "Board") as set forth in the Articles of Incorporation and the governing documents of the Club Association (except such thereof as are specifically required to be exercised by the Board or its members) . . . ."

57. In addition, the Management Agreement specifically delegated to RC Management absolute control over Plaintiffs' deeded property interests, including authority over the rules and regulations governing each plaintiffs' use of a fractional unit (¶ 5(L)), and all authority needed to maintain the Club Interest Units, including the determination of membership dues (¶ 5(I)). In addition, the Management Agreement gave RC Management authority to conduct a wide range of activities on behalf of the Club Interest Association, including management of employees (¶ 5(A)); preparing the Association's budget, keeping financial records, and managing funds received on behalf of the Association (¶¶ 5(H), 5(F) and 5(J)).

58.     Paragraph 5(S) of the Management Agreement provides RC Management with the authority to:

> "Engage a program manager through an affiliation agreement, who shall manage and administer the reservation procedures and exchange program ('Program Manager') for The Ritz-Carlton Club Membership Program (the 'Membership Program') through which (i) all Club Interest Owners reserve the use of accommodations at the Club pursuant to the Reservation Procedures . . . The Program Manager shall have the broadest possible delegation of authority regarding administration of the Reservation Procedures. . . . [RC Management] on behalf of the Club Association shall assess the Club Interests Owners the reasonable cost (as determined by the Program Manager) of operating such Reservation Procedures, which cost shall be included as part of the Member Dues."

59.     Paragraph 15 of the Management Agreement provides, "As compensation for its services hereunder, [RC Management] shall receive an annual net fee, free from all charges and expenses" of $787.86 (in 2010 dollars) "per Club Interest from the Club Interest Owners."

60.     The RC Management is the agent of the Plaintiffs based on the terms of the Management Agreement (which explicitly refers to the Management Company as the agent of the Club Association and its members), as well as by operation of law.  As such, the RC Management owes Plaintiffs fiduciary duties, including the duties of loyalty and the duty to avoid self-dealing.

61.     In addition, based upon the high degree of control over Plaintiffs' Fractional Units arising from its authority, as set forth in the Management Agreement, RC Management owes Plaintiffs fiduciary duties, including a duty of loyalty and the duty to avoid self-dealing.

**The Affiliation Agreement Gives Rise to Fiduciary Duty Owed by Cobalt**

62.     Pursuant to its contractual and statutory authority to hire subagents, RC Management, in turn, delegated managerial authority and control over Plaintiffs' use of their Club Interest Units to its sub-agent, Cobalt, which is another affiliate of the developer and a wholly-owned Marriott subsidiary.

63.     On May 16, 2008, Cobalt entered into "The Ritz-Carlton Club, Lake Tahoe Membership Program Affiliation Agreement" ("Affiliation Agreement") with RC Development,

RC Management, and the Highlands Resort Club Association. Pursuant to the Affiliation Agreement, the Plaintiffs became affiliated with and/or members of the Ritz-Carlton Membership Program.

64.     Paragraph 1.2 of the Affiliation Agreement provides: "By acceptance of a conveyance of a Residence Interest (defined below) at the Subject Club . . . each Member is deemed to have consented to the terms and conditions of this Agreement and to have further consented to the appointment of the Association as the authorized representative to act on behalf of the . . . Member with respect to the provisions of this Agreement."

65.     Cobalt is the Program Manager of the Ritz-Carlton Club Membership Program and also operates the reservation system through which Plaintiffs obtain use of their allotted number of days at the Lake Tahoe Ritz and obtain access to the sister Ritz-Carlton Destination Clubs in the Ritz-Carlton Club Membership Program. The Affiliation Agreement, paragraph 7.1(a) provides: "The Program Manager (Cobalt) may, in its sole discretion, elect to affiliate other locations with the Membership Program as Member Clubs or Associated Clubs from time to time. Neither the Developer, Association, nor Operator shall be entitled to participate in or consent to the Program Manager's decision in this regard."

66.     Based upon the terms of the Management Agreement and the Affiliation Agreement, Cobalt is the agent or subagent of the Plaintiffs, and as such, owes Plaintiffs a fiduciary duty, including a duty of loyalty and duty to avoid self-dealing.

67.     In addition, based upon the high degree of control over Plaintiffs' Fractional Units arising from its authority as set forth in the Affiliation Agreement, Cobalt owes Plaintiffs fiduciary duties, including a duty of loyalty and duty to avoid self-dealing.

## FIRST CAUSE OF ACTION

### (Rescission, Cal. Civ. Code § 1689, Against All Defendants)

68.     Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

69.     When purchasing their fractional interests, Plaintiffs justifiably understood that Defendants would sell 336 fractional interests in the 28 Club Interest Units, or at least a sufficient

number of fractional interests to make the fractional offering viable. A material mistake of fact giving rise to a right to rescind exists by virtue of: (a) Defendants' act of de-annexing 17 Club Interest Units and selling them as condominiums; and/or (b) the fact Defendants sold only a fraction of the 336 promised and/or contemplated fractional interests.

70. Plaintiffs further understood that the Lake Tahoe Ritz would be operated and maintained as an exclusive Ritz-Carlton Club open only to fractional owners at the Lake Tahoe Ritz and other properties included in the Ritz-Carlton Membership Program. The fact Defendants gave access to these properties to members of the Marriott Vacation Club also constitutes a material mistake of fact giving rise to a right to rescind.

71. Service of this Complaint and related pleadings on Defendants constitutes notice of rescission of the contracts between Plaintiffs and Defendants. Plaintiffs seek a return of the purchase price each paid, plus all other sums paid to Defendants, including but not limited to the annual dues.

72. Pursuant to Cal. Civil Code § 1692, Plaintiffs are also entitled to recover the consequential damages they sustained as a direct and proximate result of Defendants' conduct in an amount to be determined at trial in excess of the jurisdictional threshold of this Court.

<u>**SECOND CAUSE OF ACTION**</u>

**(Breach of Contract Against All Defendants)**

73. Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

74. Plaintiffs entered into one or more standardized contracts with Defendants, including the Purchase Contract, the Condominium Declaration, and/or the Club Declaration (collectively, "the Contract").

75. Plaintiffs performed all, or substantially all, of the significant things that the Contract required them to do, and/or they were excused from doing those things. All conditions required by the Contract for Defendants' performance occurred and/or were excused.

76. In the Contract, Defendants, and each of them, promised to sell fractional interests in all 28 Club Interest Units, or in other words a total of 336 fractional interests. Alternatively,

Defendants promised to sell a sufficient number of fractional interests to make the Lake Tahoe Ritz fractional offering viable.

77. Defendants, and each of them, materially breached the Contract by de-annexing 17 Club Interest Units and then converting and selling them as full-ownership condominiums. Defendants further breached the Contract by selling only a fraction of the promised 336 fractional interests, and/or by abandoning efforts to market and sell these fractional interests after selling or 60 or so of them.

78. Defendants' breach of the contract has damaged Plaintiffs in an amount to be proved at trial that is in excess of the jurisdictional limit of this Court.

## THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant Against All Defendants)

79. Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

80. A covenant of good faith and fair dealing is implied in the Contract by operation of law. Pursuant to this implied covenant, Defendants could not legally interfere with the rights of Plaintiffs to receive the benefits due to them under the Contract, or do anything inconsistent with any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the Contract.

81. Defendants breached the implied covenant of good faith and fair dealing by: (a) acting in a manner that, as more fully alleged above, unfairly interfered with Plaintiffs right to receive the benefits of the Contracts; and/or (b) acted inconsistently with implied promises that Plaintiffs reasonably understood to be included in the Contract.

82. Defendants' breach of the implied covenant of good faith and fair dealing has damaged Plaintiffs in an amount to be proved at trial that is in excess of the jurisdictional limit of this Court.

///

///

///

**FOURTH CAUSE OF ACTION**

**(Breach of Fiduciary Duty Against All Defendants)**

83.     Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

84.     Defendants RC Development and Ritz-Carlton Sales, owed Plaintiffs a fiduciary duty that required them to continue marketing and selling fractional interests in the 28 Club Interest Units at the Lake Tahoe Ritz until all 336 fractional interests were sold, or at least until a sufficient number were sold to make the fractional offering viable.  Defendants, and each of them, breached this fiduciary duty first by de-annexing and selling 17 of the Club Interest Units in 2011 as full-ownership condominiums, and second by ceasing to market and sell further fractional interests.

85.     In addition, RC Development and each of the other Defendants assumed fiduciary duties to directly to Plaintiffs by retaining and exercising control over the Club Interest Association, as more fully alleged in the introduction and "Source of Fiduciary Duties" sections. Defendants retained this control through the means set forth above, and by selecting their employees, representatives and/or agents to serve on the board of the Club Interest Association.

86.     Defendants, including RC Management and Cobalt, also assumed fiduciary duties to Plaintiffs by assuming almost complete control not just over the common areas, but also over the separately deeded fractionalized interests that Plaintiffs purchased.

87.     Defendants and/or their agents on the Club Interest Association Board had a duty to act with the utmost good faith in the best interests of Plaintiffs.  Defendants and/or their agents on the Club Interest Association breached this duty by advancing Defendants' interests at the expense of Plaintiffs' interests, and/or by failing to act as a reasonably careful fiduciary/board member would have acted under the same or similar circumstances.

88.     By the actions described elsewhere in this Complaint, Defendants profited at the Plaintiffs' expense in breach of their fiduciary duties.  Despite the destruction of the value of the Fractional Units, Plaintiffs continue to pay steadily increasing annual dues, much of which goes directly to Defendants in the form of lucrative "management fees" and other "reimbursements"

1  supposedly incurred by Defendants under the management contracts, including payroll related

2  costs. Plaintiffs pay these management fees and reimbursements to the Defendants regardless of

3  usage or occupancy.

4  89.     Due to the conduct of the Defendants described herein, the Fractional Units owned

5  by Plaintiffs are now virtually worthless and Defendants, including Marriott Vacations

6  Worldwide, Marriott Vacation Club International, RC Management, and Cobalt Travel Company,

7  LLC have been unjustly enriched by the wrongful and unlawful conduct described herein.

8  90.     Defendants' breach of fiduciary duties has damaged Plaintiffs in an amount to be

9  proved at trial that is in excess of the jurisdictional limit of this Court.

10  **FIFTH CAUSE OF ACTION**

11  **(Violations of California's UCL Against All Defendants)**

12  91.     Plaintiffs incorporate by reference the allegations contained in the preceding and

13  subsequent paragraphs as if fully set forth in this cause of action.

14  92.     The UCL prohibits, *inter alia*, business practices that violate other provisions of

15  law. Bus. & Prof. Code § 17200. The UCL authorizes a private right of action by anyone who

16  has suffered injury in fact and allows recovery of amounts which may be necessary to restore to

17  any person in interest any money or property which may have been acquired by means of any

18  practice that violates the UCL. Bus. & Prof. Code § 17203.

19  93.     Defendants have violated Business & Professions Code § 11252 by

20  "encumber[ing] the accommodations of the time-share plan in a manner that [] materially and

21  adversely affect[ed] the use rights of the [Plaintiffs] without the written assent of not less than 51

22  percent of the time-share interest owners other than the developer." Bus. & Prof. Code § 11252.

23  As more specifically alleged above, Defendants' conduct has caused the value of Plaintiffs'

24  fractional interests to collapse such that they are unable to sell at any price and thus are locked

25  into a perpetual liability.

26  94.     Defendants' practices also violated the UCL's "unfair" prong in that they caused

27  substantial injury to Plaintiffs, are not outweighed by any countervailing benefits to consumers or

28  competition, and caused injury that Plaintiffs themselves could not reasonably have avoided.

95. As a result of Defendants' unlawful and unfair practices alleged herein, Plaintiffs have suffered injury in fact and lost money or property and are thus entitled to full restitution.

96. Defendants have derived substantial revenues from their unlawful and unfair business practices. Plaintiffs have been deprived of property to which they are entitled and/or in which they have a vested interest.

97. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs are entitled to an order requiring Defendants to restore to Plaintiffs all the money or property that Defendants may have acquired by means of such unfair competition.

## SIXTH CAUSE OF ACTION

### (Aiding & Abetting)

### (Against All Defendants)

98. Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

99. Defendants, and each of them, aided and abetted the remaining Defendants' scheme to commit the wrongful and unlawful conduct alleged herein.

100. The aiding and abetting Defendants had prior notice of the remaining Defendants' wrongful and unlawful activities, but nonetheless acted affirmatively to help the other Defendants perpetrate their scheme against Plaintiffs.

101. Defendants' aiding and abetting the wrongful and unlawful conduct alleged herein has damaged Plaintiffs in an amount to be proved at trial that is in excess of the jurisdictional limit of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as follows:

1. For special damages according to proof;

2. For general damages according to proof;

3. For restitution of all monies paid to the Defendants or their assigns, according to proof;

COMPLAINT

1      4.     For rescission of all agreements entered into with Defendants and the return of all

2  consideration paid to Defendants.

3      5.     For an Order pursuant to Cal. Civil Code §§ 2223, 2224, and 3517 that all funds

4  improperly obtained by Defendants are held in a constructive trust for Plaintiffs' benefit, and a

5  further Order requiring Defendants to return such improperly-obtained funds, including all

6  derivative profits earned, to Plaintiffs in order to prevent Defendants' unjust enrichment;

7      6.     For attorneys' fees and costs according to proof;

8      7.     For pre-judgment and post-judgment interest; and

9      8.     For such other and further relief as the Court may deem proper.

## JURY DEMAND

If for any reason this case is not tried by judicial reference as contractually required, Plaintiffs demand a trial by jury on all issues so triable.


Dated: June 28, 2016          LAW OFFICE OF MICHAEL J. REISER

                      THE MEADE FIRM P.C.


                      By: /s/ Tyler Meade
                      TYLER MEADE
                      Attorneys for Plaintiffs

COMPLAINT

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ARJUN BHAGAT and ANITA MANWANI, individually and as Trustees of the Bhagat Family Trust; (See Attachment 1 for Additional Plaintiffs)

**(b)** County of Residence of First Listed Plaintiff    Santa Clara County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

(See Attachment 1)

## DEFENDANTS

MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation; (See Attachment 1 for Additional Defendants)

County of Residence of First Listed Defendant    Orlando, Florida
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
       Plaintiff
- ☐ 3  Federal Question
       *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
       Defendant
- ☒ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Breach of contract, rescission, breach of fiduciary duty, unfair competition

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** According to proof

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE   Hon. Morrison England    DOCKET NUMBER   16-cv-00237

DATE
06/28/2016

SIGNATURE OF ATTORNEY OF RECORD
/s/ Tyler Meade

**FOR OFFICE USE ONLY**

RECEIPT #                AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

*Arjun Bhagat, et al. v. Marriott Vacations Worldwide Corporation, et al.*
Case No.:


## ATTACHMENT 1 TO CIVIL COVER SHEET


**I. (a) <u>Additional Plaintiffs</u>:**


JAY A. MORGESON and DONNA L. MORGESON; and JOSEPH TAN, individually and as Trustee of the Joseph Tan Revocable Trust


**I. (a) <u>Additional Defendants</u>:**


MARRIOTT OWNERSHIP RESORTS, INC., a Delaware corporation d.b.a. Marriott Vacation Club International; RITZ-CARLTON DEVELOPMENT COMPANY, INC., a Delaware corporation; RITZ-CARLTON SALES COMPANY, INC., a Delaware corporation; RITZ-CARLTON MANAGEMENT COMPANY, LLC, a Delaware limited liability company; THE COBALT TRAVEL COMPANY, LLC, a Delaware limited liability company; and DOES 1 THROUGH 50


**I. (c) <u>Attorneys</u>:**

| | |
|---|---|
| Michael J. Reiser (SBN 133621) | Tyler Meade (SBN 160838) |
| Lilia Bulgucheva (SBN 291374) | Melissa Riess (SBN 295959) |
| LAW OFFICE OF MICHAEL J. REISER | THE MEADE FIRM P.C. |
| 961 Ygnacio Valley Road | 1816 Fifth Street |
| Walnut Creek, CA 94596 | Berkeley, CA 94710 |
| Telephone: (925) 256-0400 | Telephone: (510) 843-3670 |