| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS F. REISER JR and LINDA T. REISER, individually and as Trustees of the Tom and Linda Reiser Living Trust Dated June 20, 2006; et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation; et al., <br><br> Defendants. | No. 2:16-cv-00237-MCE-CKD <br><br> (Consolidated Case) <br><br> **ORDER** |
| CHRISTOPHER B. EHRLICH and SARA F. EHRLICH, individually, <br><br> Plaintiffs, <br><br> v. <br><br> MARRIOTT VACATIONS WORLDWIDE CORPORATION, a Delaware corporation; et al., <br><br> Defendants | |

The present lawsuit stems from the purchase, by Plaintiffs Christopher B. Ehrlich and Sara F. Ehrlich ("Plaintiffs"), of fractional interests in the Ritz-Carlton Club, Lake Tahoe, located in Truckee, California (the "Lake Tahoe Ritz"). Currently before this

Court is Defendants' Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] As set forth below, Defendants' Motion is DENIED.[2]

**BACKGROUND[3]**

The Lake Tahoe Ritz consists of twenty-eight residential condominiums ("Club Interest Units"). Under a framework established by the so-called Club Interest Declaration,[4] Defendants fractionalized these twenty-eight Club Interest Units into three hundred thirty-six timeshare units ("fractional interests" or "fractional units"). The Club Interest Declaration, which was specifically incorporated within the Purchase Agreements used to buy the fractional interests, established a Club Interest Association with authority over not only the common areas of the complex but also each individual fractional interest purchased.

On May 16, 2008, in accordance with the Club Interest Declaration, Defendant RC Management agreed to act on behalf of the Club Interest Association and its members as the exclusive operating entity of the Club. The resulting "Management Agreement"[5] delegated absolute control over the deeded fractional property interests to RC Management, including authority over the rules and regulations governing each

---

[1] Plaintiffs' Complaint identifies the following Defendants: Ritz-Carlton Development Company, Ritz-Carlton Sales Company, Inc., Ritz-Carlton Management Company, LLC, and Cobalt Travel Company, LLC (collectively, "Defendants").

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

[3] This section is based on the allegations contained within the Plaintiffs' Complaint, filed as Case No. 2:17-cv-00952-MCE-CKD (ECF No. 1), and consolidated with <u>Reiser v. Marriott Vacations Worldwide Corporation, et al.</u>, Case No. 16-cv-00237-MCE-CKD ("<u>Reiser</u> action") by Amended Order filed in that case on July 25, 2017 (ECF No. 16).

[4] This document, known formally as the Declaration of Covenants and Restrictions for the Highlands Resort West Parcel Club, is dated May 30, 2008.

[5] This agreement, entered into on May 16, 2008, is formally named the Highlands Resort Club Association Operating Agreement and was later amended on March 19, 2010.

2

owner's use of a fractional unit, and all authority to maintain the Club Interest Units. RC Management, in turn, delegated managerial authority and control over use of the Club Interest Units, pursuant to its authority to hire subagents, to Defendant Cobalt Travel Company, LLC ("Cobalt").

In early 2009, Defendants sold one-twelfth fractional units to Plaintiffs and approximately thirty-eight other buyers. As owners of fractional interests, Plaintiffs were given exclusive accessibility rights to the Lake Tahoe Ritz not available to non-owners of fractional interests. Among other benefits, Plaintiffs' ownership entitled them to spend up to twenty-one days per year at the Lake Tahoe Ritz.

Defendants' efforts to sell fractional units in the Lake Tahoe Ritz stalled as the economy deteriorated. In November 2011, Defendants de-annexed seventeen of the original twenty-eight Club Interest Units and sold them as regular, non-fractionalized condominium units. In July 2012, Defendants announced their intention to pursue a new external exchange affiliation ("MVC Affiliation") between Defendant Ritz-Carlton Development Company, Inc. ("RC Development") and the Marriott Vacation Club ("MVC") that afforded MVC members many of the same privileges at the Lake Tahoe Ritz that Plaintiffs enjoyed as fractional unit owners. MVC is a larger, less exclusive, and less expensive competing product managed, owned, and promoted by Defendants. In 2014, Defendants used their control over Cobalt to implement the MVC Affiliation. Through the MVC Affiliation with RC Development, MVC members can spend just as many days at the Lake Tahoe Ritz as Plaintiffs, and do so at a significantly reduced cost compared to Plaintiffs.

As a result of the de-annexation of Club Interest Units and the MVC Affiliation, the operational costs at the Lake Tahoe Ritz are spread only among the owners of fifty-nine fractional units, rather than three hundred thirty-six fractional units that would exist if Defendants had sold all of the Club Interest Units as fractional interests. According to Plaintiffs, the de-annexation and MVC affiliation resulted in a significant increase in the annual dues that Plaintiffs must pay each year, a loss of access to the Lake Tahoe Ritz,

and a significant reduction in the value of Plaintiffs' one-twelfth fractional units. Moreover, once the MVC Affiliation was effectuated in or around 2014, Plaintiffs allege that "Defendants discontinued any meaningful effort to continue to sell fractional interests in the Lake Tahoe Ritz, opting instead to market their competing [MVC] product to Plaintiffs' detriment." Pls.' Comp., ¶ 6. According to Plaintiffs, this "cessation of sales efforts was undertaken so that the "developer inventory" that the Defendants could not de-annex and sell outright could be utilized by the Defendants as inventory to be used by [MVC] members", thereby causing Plaintiffs' fractional units "to become obsolete and worthless." Id.

The terms of the Club Interest Declaration, as well as the subsequent Management Agreement with RC Management and RC's delegation to Cobalt, granted those entities authority over not only the common areas, but also the separately deeded property interests that each individual fractional unit owner purchased. As indicated above, the Club Interest Declaration gave the Club Interest Association all powers necessary to ensure the proper functioning of each individual fractional unit, as well as the power to delegate that authority to a professional management company. Pursuant to the Management Agreement, the Club Interest Authority delegated that authority to RC Management. Additionally, as authorized by California Business & Professions Code Section 11267(a)(2), which allows professional management companies to hire subagents, RC Management, in turn, entrusted its authority to Cobalt. According to Plaintiffs, Defendants used the resulting control to essentially gut the value of the fractional interests Plaintiffs purchased.

Plaintiffs are therefore unable to sell their fractional units. In May 2015, Plaintiffs claim that Thomas F. Reiser, another fractional interest owner,[6] contacted real estate agent Liza Killen of the Northstar Office of Tahoe Mountain Realty to inquire about selling his fractional interest. Killen responded that there was only one Ritz Carlton

---

[6] As indicated above, Plaintiff Reiser filed his own lawsuit, and the instant action has since been consolidated with the Reiser action. See fn. 3, supra.

4

fractional unit on the market for $5,000.00, and all other listings had either expired or were cancelled.  In May 2016, Plaintiff Reiser contacted a second Northstar real estate agent, Sam Drury of Padden Properties.  Drury told Reiser that a Ritz Carlton fractional unit had not sold in the previous two years.  According to Drury, the fractional ownership interests, which had typically been purchased for sums in excess of $200,000.00, had lost nearly all their value.  He expressed the belief that there simply was no market for the interests.

Plaintiffs' Complaint alleges six causes of action: (1) rescission, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) breach of fiduciary duty, (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and (6) aiding and abetting.  Through the present motion, Defendants first ask that all of Plaintiffs' claims, insofar as they relate to the de-annexation of club interests at the Lake Tahoe Ritz, be dismissed on grounds that said claims are untimely.  Second, Defendants ask that the Court dismiss Plaintiffs' UCL claim on grounds that Plaintiffs have not adequately alleged that their Club interest is in fact worthless.  Finally, Defendants reiterate the same arguments for dismissing all of Plaintiffs' claims in their entirety, despite the fact that identical arguments have already been made and rejected by this Court in earlier Orders filed on April 29, 2016 and February 13, 2017, respectively, in the Reiser action.  See ECF Nos. 17, 32.[7]

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure12(b)(6),[8] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

---

[7] Because those arguments have already been fully adjudicated and denied, they need not be further considered in this Memorandum and Order.

[8] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

5

Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

///

**ANALYSIS**

### A. Timeliness of Plaintiffs' De-Annexation Claims

Defendants assert that all of Plaintiffs' claims are subject to a four-year limitations period. See Cal. Civ. Code § 337(3) (four-year limitations period for rescission claims); id. at § 337(1) (four-year period also applies to claims alleging breach of contract); Hines v. Wells Fargo Home Mortgage, Inc., 2014 WL 5325470 at *6 (E.D. Cal. Oct. 17, 2014 (same limitations period applicable to breach of contract also applies to claims for breach of the implied covenant of good faith and fair dealing); Sacramento E.D.M., Inc. v. Hynes Aviation Industries, 2017 WL 1383289 at * 18 (E.D. Cal. Apr. 18, 2017) (Cal. Civ. Code § 343's four-year limitations period applies to breach of fiduciary duty claims); Cal. Bus. Prof. Code § 17208 (UCL claims have four-year limitations period after date of accrual); Am. Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 1478 (2014) (aiding and abetting claims generally have same limitations period as underlying tort).

With respect to Plaintiffs' de-annexation claims, they allege that "on or about November 18, 2011, Defendants announced that they had secretly de-annexed 17 of the 28 Club Interest Units from the Club Interest Declaration, and sold them as non-fractionalized, regular condominium units . . . " Pls.' Compl., ¶ 4. Pointing out that the instant Complaint was not filed until May 5, 2017, some five and one-half years after the alleged de-annexing took place, Defendants claim that it is clear from the face of Plaintiffs' pleading that the limitations period has run with respect to de-annexation. Consequently, Defendants urge the Court to dismiss the de-annexation allegations as time-barred.

Certain "equitable exceptions to and modifications of the usual rules governing limitations periods" have nonetheless been recognized. Aryeh v. Canon Business Solutions, Inc., 55 Cal. 4th 1185, 1192 (2013). Such exceptions may either "alter the

7

rules governing the initial accrual of a claim, the subsequent running of the limitations period, or both." Id. Here, Plaintiffs seek relief from the statutory bar on two grounds. They argue that their de-annexations claims are saved by the so-called "continuing violation" doctrine, and alternatively claim, at a very minimum, that the "continuous accrual" theory protects damages stemming from de-annexation for four years prior to the filing of their Complaint.

As the California Supreme Court has noted, "[t]he continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them. Id., citing Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 811-18 (2001). Here, Plaintiffs contend that de-annexation itself is "part of a larger pattern of related wrongdoing and a company policy intended for the singular purpose of disposing of the Ritz's unwanted developer inventory to the detriment of fractional interest owners." Pls.' Opp., 5:18-20. Plaintiffs go on to describe de-annexation as "merely one part of a three-part strategy" to rid themselves of said inventory. Id. at 6:2-3. They describe this multi-year, ongoing pattern of conduct as including, in addition to de-annexation, both merging the Ritz-Carlton Vacation Club with the MVC and abandoning all sales efforts at the Lake Tahoe Ritz. According to Plaintiffs, this sequenced strategy has "cumulatively destroyed the viability of the Lake Tahoe Ritz club and gutted the value of Plaintiffs' fractional interest." Id. at 6:3-6, citing Pls.' Compl., ¶¶ 2-6.

Although, as indicated above, de-annexation itself is alleged to have occurred on or about November 18, 2011 (Pls.' Compl, ¶ 30), the merger between the Ritz-Carlton Destination Club, while announced in 2012, was allegedly not effectuated until 2014 (Id. at ¶ 35). This was within four years of the filing of Plaintiffs' Complaint in May of 2017. Additionally, to the extent that Plaintiffs allege that Defendants have since "discontinued any meaningful effort to sell fractional interests at the Lake Tahoe Ritz, opting instead to market their competing [MVD] product to Plaintiffs' detriment," that process appears to be ongoing, and would consequently also extend into the limitations period. See id. at

¶ 6.

Significantly, the California Supreme Court has recognized that the continuing violation theory can apply to a "wrongful course of conduct [which] became apparent only through the accumulation of a series of harms." Aryeh, 55 Cal. 4th at 1198. The Court believes that Plaintiffs' allegations as enumerated above are sufficient to meet this standard, since according to the Complaint it was not just de-annexation but the combination of de-annexation, merger with the MVC and the discontinuation of sales efforts that cumulatively caused Plaintiffs' fractional interests to lose their value. This is particularly true given the fact that Defendants' motion to dismiss is premised on a statute of limitations defense. "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993) (citing Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)). The Court concludes here that Plaintiffs' allegations, construed liberally, are sufficient both to invoke the continuing violation theory and to satisfy this standard. Consequently, Defendants' Motion to Dismiss as to the de-annexation allegations of Plaintiffs' Complaint fails.[9]

### B. Viability of UCL claim

Under the Unfair Competition Law ("UCL") a court may enjoin any person or entity engaging in unfair competition. Cal. Bus. & Prof. Code § 17203. The UCL creates "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012). In their Fifth Cause of Action, Plaintiffs allege Defendants violated both the UCL's "unlawful" and "unfair" prongs. See Pls.' Compl, ¶¶ 91-93. Defendants move to dismiss on grounds that irrespective of the theory upon which Plaintiffs' UCL claim is predicated, Plaintiffs have failed to demonstrate any basis, beyond speculation, that the value of

---

[9] Because the Court concludes that the de-annexation claims survive under the continuing violation theory, it need not address Plaintiffs' alternative argument that they also may be viable, at least in part, under the "continuous accrual" doctrine.

9

their fractional interests has been compromised, let alone diminished to nothing or near nothing as Plaintiffs allege. Defendants claim that simply alleging that "value of [their] fractional interests [has … collapse[d] such that they are unable to sell at any price" (id. at ¶ 91) is insufficient without any allegations that Plaintiffs ever attempted to sell their fractional interest or listed said interest for sale and received no offers. In the absence of any showing of resulting damage, Defendants assert that Plaintiffs have not stated a viable UCL claim.

While Plaintiffs claim that another fractional interest owner, Reiser, contacted two Lake Tahoe area realtors and was told that the Lake Tahoe Ritz interests were unmarketable and essentially worthless (see id. at ¶¶ 39-40), Defendants maintain that "[w]hat Mr. Reiser was supposedly told about his fractional interest says nothing about the value of Plaintiffs' fractional interest" since real property values are, in essence, unique. See Defs.' Opp., 4:11-12. Moreover, according to Defendants, since Reiser's alleged contacts were in May 2015 and May 2016, respectively, Defendants maintain that those contacts are too far removed in time to have any probative value as to Plaintiffs' own property value in any event.

The Court is unpersuaded that these allegations are insufficient to demonstrate damage for pleadings purposes. First and foremost, given the fact that both Reiser and Plaintiffs had the exact same kind of fractional interest in the same property, membership units in the Lake Tahoe Ritz, Reiser's experience in attempting to market his interests is unquestionably relevant to Plaintiffs' claims herein. According to the Complaint, in May of 2015, Liza Killen, a real estate agent at the Northstar Office of Tahoe Mountain Realty, told Reiser that there were no pending listings for the Ritz Carlton fractional units other than a two bedroom house on the market for $5,000.00, with "all other listings either expired or . . . cancelled." Pls. Compl,, ¶ 39. A second real estate agent, Sam Drury at Padden Properties, similarly indicated a year later that the Ritz Carlton fractional interests "have lost nearly ALL value." Id. at ¶ 40. Drury added that "[i]t is clear there's no market for this product at all" since despite purchase prices

exceeding $200,000, only one Lake Tahoe Ritz unit had sold in the last two years, and then for only $5,000 on December 17, 2015.  Id.

To withstand a motion to dismiss, Plaintiffs need only provide enough "[f]actual allegations . . . to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  By alleging that the MVC Affiliation diluted the value of Plaintiffs' fractional interests, and by alleging that the value of those interests plunged to virtually nothing, Plaintiffs' Complaint satisfies that standard.  Particularly since the allegations of Plaintiffs' Complaint must be construed liberally in the context of a motion to dismiss, the fact that the last such representation made by the above-mentioned realtors occurred a year before Plaintiffs filed their Complaint does not detract from Plaintiffs' overall claim that fractional owners continue to be unable to sell their units for any price.  Defendants' Motion to Strike Plaintiffs' UCL claim accordingly also fails.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 56) for failure to state a claim pursuant to Rule 12(b)(6), is DENIED.

IT IS SO ORDERED.

Dated:  June 7, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE